**WO**                                                                                    SVK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ronald N. Jose, | No. CV 11-0486-PHX-GMS (SPL) |
| Plaintiff, | **ORDER** |
| vs. | |
| Todd Thomas, et al., | |
| Defendants. | |

     Plaintiff Ronald N. Jose, a Hawaiian inmate in custody at the Saguaro Correctional Center (SCC), a Corrections Corporation of America (CCA) facility in Eloy, Arizona, brought this civil rights action under 42 U.S.C. § 1983 against multiple officials of SCC. Defendants—Warden Todd Thomas, Assistant Warden Ben Griego, and Unit Manager Timothy Dobson—move for summary judgment.[1]  (Doc. 53.)

     The Court will grant Defendants' motion and terminate the case.

**I.    Background and Summary of Motion**

     In his First Amended Complaint, Plaintiff alleged that numerous conditions of confinement in the segregation unit where he is housed violate the Eighth Amendment. (Doc. 7.)

---

[1]The Court issued an Order with the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), that advised Plaintiff of the rules governing summary judgment. (Doc. 56.)

In their Motion, Defendants assert that Plaintiff lists 15 conditions of confinement that allegedly violate his constitutional rights. (Doc. 53.)  They contend that Plaintiff failed to exhaust his administrative remedies as to 7 of the conditions and that as to the remaining 8, no constitutional violation has occurred. (Id.)  They argue that Plaintiff cannot establish that Defendants personally participated in any deprivation. (Id. at 15-16.)  They also argue that Plaintiff cannot recover damages for emotional distress, he is not entitled to punitive damages, and claims originating in 2008 are barred by the statute of limitations and that the relevant time period is from March 28, 2009 to March 28, 2011. (Id. at 16-17, and 2, n.2.)

Defendants submit their motion (Doc. 53), their Statement of Facts (Doc. 54 (DSOF)), the affidavit of Juan Valenzuela, with attachments (id., Ex. 1, Valenzuela Aff., Attachs. A-F); the affidavit of Todd Thomas (id., Ex. 2) with attachments (Docs. 54-55); and excerpts from Plaintiff's deposition (Doc. 55, Ex. 3, Pl. Dep., Nov. 28, 2011). Plaintiff submits his response (Doc. 62), which includes a Statement of Facts (id. at 3-5 (PSOF)) and his declaration (id. at 5-7 (Pl. Decl.)). Plaintiff also submits the affidavit of another inmate; it was not filed with Plaintiff's response and was filed after Defendants' reply. (Doc. 67.) Therefore, the Court will not consider it.

## II.     Exhaustion of Administrative Remedies

### A.     Legal Standard

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement

in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact.  Id. at 1119-20.  Further, a court has broad discretion as to the method to be used in resolving the factual dispute.  <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B.    Parties' Contentions

Defendants assert that under the CCA/SCC grievance policy, if an inmate wants to complain about the conditions of his confinement, he must first try to resolve the issue informally through a Request for Service to his Case Manager or Unit Manager.  (Doc. 54 ¶ 13.)  The next step is to attempt to resolve the issue by completing a 14-5A Informal Resolution form, with a copy of the Request for Service attached.  (Id. ¶ 14.)

If the inmate is dissatisfied with that result, he can file a formal grievance on a 14-5B form. (Id. ¶ 17.)  Within 15 days, the facility grievance officer will conduct an investigation and issue a decision.  (Id. ¶ 19.)  The inmate can appeal to the Warden.  (Id. ¶ 20.)  The Warden has 15 days to respond to the appeal, and the Warden's decision is final.  (Id. ¶ 21.)  There are time limits for the inmate at each stage.  (Id. ¶¶ 15, 16 , 18, 19, 20.)

All grievances are noted in a Grievance Log and copies of the grievances are kept in each inmate's grievance file.  (Id. ¶ 28.)  Valenzuela attests that he reviewed the Grievance Log and Plaintiff's grievance file and documents and that Plaintiff did not exhaust his administrative remedies as to the following:

- extreme idleness: allowed to only read 1 book or newspaper per week and does not have access to programs, education or religious services provided in segregation;
- the clothing provided in segregation is limited to only one change of clothes, a boxer and T-shirt;
- no access to a storage locker; and
- sun block, lip balm, lotion, and dental floss are not allowed.

(Id., Valenzuela Aff. ¶¶ 31-37.)

Plaintiff asserts that he did exhaust and that the PLRA does not require an informal, only a grievance.  (Doc. 62, PSOF ¶ 30, Pl.'s Decl. ¶ 30.)

In their reply, Defendants reassert that Plaintiff failed to exhaust as to these claims and note that Plaintiff offers no evidence to the contrary. (Doc. 62 at 4.)

1

    ### C.    Analysis

2       The Court will grant Defendants' motion to dismiss the specified claims; Defendants

3   have met their burden to demonstrate that an administrative remedy was available and that

4   Plaintiff failed to exhaust his remedies under that procedure.  Plaintiff does not refute

5   Defendants' evidence by pointing to language in the grievance documents provided by

6   Defendants that would constitute exhaustion of these claims; the Court has reviewed the

7   documents and finds no indication of exhaustion of such claims.  Plaintiff does not provide

8   additional grievance documents.

9       The Court will dismiss Plaintiff's claims alleging constitutional violations for extreme

10  idleness and lack of programs; clothing being limited to only one change of clothes, a boxer

11  and T-shirt; lack of access to a storage locker; and denial of sun block, lip balm, lotion, and

12  dental floss.  These claims will be dismissed without prejudice.

13  ### III.   Conditions of Confinement

14  ### A.    Legal Standards

15  ### 1.    Summary Judgment

16      A court must grant summary judgment "if the movant shows that there is no genuine

17  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

18  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under

19  summary judgment practice, the movant bears the initial responsibility of presenting the basis

20  for its motion and identifying those portions of the record, together with affidavits, that it

21  believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S.

22  at 323.

23      If the movant meets its initial responsibility, the burden then shifts to the nonmovant

24  to demonstrate the existence of a factual dispute and that the fact in contention is material,

25  i.e., a fact that might affect the outcome of the suit under the governing law, and that the

26  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

27  the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton

28  Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need

1   not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v.

2   Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific

3   facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v.

4   Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P.

5   56(c)(1).

6          **2.      Conditions of Confinement and Liability**

7          "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual

8   punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319

9   (1986).  "Among 'unnecessary and wanton' inflictions of pain are those that are totally

10  without penological justification." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citation

11  omitted).  To demonstrate that a prison official has deprived an inmate of humane conditions

12  in violation of the Eighth Amendment, two requirements must be met—one objective and

13  one subjective.  Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000).  First, "the prison

14  official's acts or omissions must deprive an inmate of the minimal civilized measure of life's

15  necessities." Id. at 1133 (internal citation omitted).  The subjective prong requires the inmate

16  to demonstrate that the deprivation was a product of "deliberate indifference" by prison

17  officials.  Wilson v. Seiter, 501 U.S. 294, 303 (1991).  To act with deliberate indifference,

18  a prison official must both know of and disregard an excessive risk to inmate health; the

19  official must both be aware of facts from which the inference could be drawn that a

20  substantial risk of serious harm exists, and he must also draw the inference.  Farmer v.

21  Brennan, 511 U.S. 825, 837 (1994).

22         To comply with the Eighth Amendment's prohibition against cruel and unusual

23  punishment, a prison must provide prisoners with "adequate food, clothing, shelter,

24  sanitation, medical care, and personal safety." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th

25  Cir. 1982), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

26  This does not mean, however, that federal courts can or should interfere whenever prisoners

27  are inconvenienced or suffer de minimis deprivations.  See Bell v. Wolfish, 441 U.S. 520,

28  539 n.21 (1979) (noting that a de minimis level of imposition does not rise to a constitutional

violation).  "[T]he circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."  Johnson v. Lewis, 217 F. 3d 726, 731 (9th Cir. 2000).  Moreover, "[c]ourts may not find Eighth Amendment violations based on the 'totality of conditions' at a prison."  Hoptowit, 682 F.2d at 1246.

In addition, to prevail on a claim under § 1983, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).  There is no *respondeat superior* liability under § 1983, and, therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  Monell v. New York City Department of Social Services, 436 U.S. 658, 691-92 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  To prevail on a claim against a supervisory official, the civil rights complainant must demonstrate that the supervisory official personally participated in the constitutional deprivation or that the supervisory official was aware of widespread abuses and, with deliberate indifference to the inmate's constitutional rights, failed to take action to prevent further misconduct.  See Ortez v. Washington County, Or., 88 F.3d 804, 809 (9th Cir. 1996); Taylor, 880 F.2d 1040, 1045 (9th Cir. 1989); King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987); see also Monell, 436 U.S. at 691. In addition, there is supervisory liability if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation."  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).

### B.    Parties' Contentions and Analysis

During the time period of Plaintiff's Complaint, Plaintiff was housed in disciplinary segregation and administrative segregation.  (Doc. 54, DSOF ¶ 40; Doc. 62, PSOF ¶ 40.)

///

///

///

**Housing**

1.      **Parties' Assertions**

Plaintiff's claim regarding housing is that there is a mixing of gang members and violent offenders as a result there have been murders and assaults.  (Doc. 62 at 1; Doc. 7 at 3A.)  Defendants assert that SCC does not recognize gang affiliations in making housing decisions because doing so validates the gang, which in turn empowers it and promotes participation in gang activity.  (Doc. 54, DSOF ¶ 41.)  Housing decisions are determined case-by-case based on the inmate's classification status, housing and disciplinary history, safety and security needs, unit population profile, and contracting agency requirements.  (Id. ¶ 42.)  Unless a specific problem is known or there is another reason to conclude that a potential for violence exists between two inmates, there is no way for a prison official to know in advance of any threat that one prisoner may pose to another.  (Id. ¶ 43.)

Plaintiff contends that housing decisions are done whenever prison officials want, "how they want, with no reason, no policy, no order."  (Doc. 62, PSOF ¶ 42.)  Even if staff are notified of a problem, a request to be removed is denied and inmates have been killed.  (Id. ¶ 43.)  If inmates living together do not get along, they are told to work it out.  (Id., Pl. Decl. ¶ 5.)  He also claims generally that Defendants make weekly walk-throughs in segregation and are aware of the conditions and are solely responsible for the policies.  (Id. ¶ 20.)

In their reply, Defendants assert that they established the procedure for housing decisions.  (Doc. 66 at 6.)  They argue that Plaintiff has never alleged that he is a member of a gang, that he has any known enemies, that he was housed with a rival gang member or enemy, or that he was the victim of any kind of violence as a result of being housed with a rival gang member or enemy.  (Id. at 6-7.)  They contend that he fails to provide any evidence that he has been damaged by this alleged condition or that the alleged condition is unconstitutional.  (Id. at 7.)

///

///

1        2.      **Analysis**

2        "[P]risons are necessarily dangerous places; they house society's most antisocial and

3    violent people in close proximity with one another."  Farmer, 511 U.S. at 858 (1994), J.

4    Thomas, concurring; see also Whitley, 475 U.S. at 321 (prisons present an "ever-present

5    potential for violent confrontation and conflagration." ).  Although prison officials have a

6    duty to keep inmates safe, and in particular to protect them from each other, Farmer, 511 U.S.

7    at 832-33, it is well established that judges and juries must defer to prison officials' expert

8    judgments, especially in matters of internal security.  Rhodes, 452 U.S. at 349, n. 14;

9    Norwood v. Vance, 591 F.3d 1062, 1066 (9th Cir. 2010).  "[T]he deliberate indifference

10   standard 'incorporates due regard for prison officials' 'unenviable task of keeping dangerous

11   men in safe custody under humane conditions.'" Norwood, (citing Farmer, 511 U.S. at 845

12   (quoting Spain v. Procunier, 600 F.2d 189, 193 (9th Cir. 1979)).

13       Plaintiff offers nothing but a few conclusory statements regarding the violence in the

14   segregation unit; there is no evidence to support his claim of murders and assaults or that

15   such incidents were the result of mixing gang members.  There is no evidence of a policy of

16   ignoring known risks to inmate safety; Plaintiff's claim that Defendants are aware of

17   conditions does not create a triable issue of fact.  And there is no evidence that Plaintiff has

18   suffered any harm from his housing assignment.  Defendants are entitled to summary

19   judgment on this claim.

20                          **Lighting**

21       1.      **Parties' Assertions**

22       Defendants assert that the lighting about which Plaintiff complains is a dim low-level

23   9-watt bulb nightlight, which enhances security at the facility, but is dim enough to provide

24   an adequate sleeping environment. (Doc. 54, DSOF ¶¶ 44-45.) The nightlights are different

25   from the much brighter security lights and the regular fluorescent lights that are used in the

26   cells during the day and emit light that is less bright than or comparable to the illumination

27   emitted by an alarm clock. (Id. ¶ 45.) SCC is an American Correctional Association (ACA)

28   accredited facility, and meets ACA standards, including lighting standards;  use of low-level

nightlights is standard practice for correctional facilities. (Id. ¶¶ 46-47.)  Defendants assert that the level of illumination used at SCC at night is the minimum amount necessary to sufficiently address security concerns and to allow correctional staff to observe inmates during the night and regular sleeping hours and to make regular security checks. (Id. ¶ 48.) Sleeping masks are now available.  (Id. ¶ 51.)  Thomas attests that he considered use of flashlights to conduct searches but concluded that they would be more annoying and disruptive than the continuous low-level nightlights and could create conflict between inmates and staff. (Id., Ex. 2, Thomas Decl. ¶¶ 36-37.)  Plaintiff admits that he suffered no physical injury as a result of the nightlight.  (DSOF ¶ 52.)

Plaintiff claims that the light is so bright that he can read by it.  (Doc. 62, PSOF ¶ 44, Pl. Decl. ¶ 21.)  The light only enhances security if an office looks into the cell, so there is no reason to keep the light on all night.  (PSOF ¶ 45.)  He claims that staff only looks into the cell every 30 minutes.  (Id. ¶ 48.)  At most facilities, staff uses a flashlight.  (Id. ¶ 47.)  He claims that SCC does not meet ACA standards and points out that Defendants' provide no proof of meeting the standards.  (Id. ¶ 46.)  As for the sleeping mask, Plaintiff asserts that it only became available after the lawsuit was filed and notes that not every inmate has the money to buy one.  (Id. ¶ 51.)

In their reply, Defendants argue that it is well established that night lights that emit the same or higher wattage as those used at SCC do not violate the Eighth Amendment. (Doc. 66 at 5-6.)  Plaintiff offers nothing more than his beliefs that Defendants should operate the facility differently regarding lighting.  (Id. at 6.)

## 2.    Analysis

The Eighth Amendment requires that inmates be given appropriate lighting.  Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996), amended 135 F. 3d 1318 (9th Cir. 1998). Constant illumination of a prison cell, standing alone, has been upheld as constitutional under certain circumstances.  See, e.g., Warren v. Kolender, 2009 WL 196114, at *15 (S.D. Cal., Jan. 22, 2009).  But 24-hour lighting with excessively bright bulbs has been held to violate the Eighth Amendment where it causes mental and psychological problems.  See Keenan, 83

F.3d at 1090-91.  Whether constant security lighting in prison cells violates the Eighth Amendment is fact-specific and often depends upon the brightness of the light at issue.  For example, 24-hour lighting with single 9-watt or 13-watt bulbs has been found not to be objectively unconstitutional.  Vasquez v. Frank, 290 F. App'x 927, 929 (7th Cir. Aug.15, 2008) (24-hour lighting with one 9-watt fluorescent bulb not an "extreme deprivation"); McBride v. Frank, 2009 WL 2591618, at *5 (E.D. Wis. Aug. 21, 2009) (24-hour lighting with a 9-watt fluorescent bulb not unconstitutional).  See also Grenning v. Miller-Stout, 2011 WL 2600755, *4-5 (E.D. Wash. June 1, 2011) (no triable issue of fact on the constitutionality of use of a single 32-watt bulb with a light diffusing sleeve), adopting Report and Recommendation, 2011 WL 2678953 (E.D. Wash. June 30, 2011).

Defendants proffer evidence showing that each cell contains one 9-watt night light to enable staff to conduct health and welfare/security checks during the night.  Defendants have a legitimate penological interest in 24-hour cell lighting.  Plaintiff does not adequately dispute the wattage; he merely claims that the light is too bright.  But the Constitution does not mandate comfortable prisons, Rhodes, 452 U.S. at 349, and Plaintiff's conclusory assertion is insufficient to create a triable issue of fact.  Defendants are entitled to summary judgment on this claim.

**Use of Force**

### 1.    Parties' Assertions

In his First Amended Complaint, Plaintiff alleged that there had been 50 uses of gas and mace in one year for no reason other than to abuse two inmates when only one needs to be restrained.  (Doc. 7 at 3A.)  Defendants assert that Plaintiff has never been subjected to any staff use of force or "OC" spray.  (Doc. 54, DSOF ¶ 53.)  On one occasion, Plaintiff requested medical care for alleged injuries associated with the use of pepper spray on other individuals; treatment was not required for his alleged injuries.  (Id. ¶ 73.)

Plaintiff argues that the air vents should be turned on when gas is used to extract an inmate from his cell and that there should be a limit on the amount of gas used.  (Doc. 62, Pl. Decl. ¶ 4.)  Noxious gas should be used when necessary and with caution.  (Id. ¶ 28.)

1   Defendants argue in their reply that Plaintiff fails to connect the use of force in

2   November Unit to any injuries suffered by him.  (Doc. 66 at 6.)  He admits he has never been

3   the target of the pepper spray used by prison officials and merely reiterates his belief that the

4   pepper spray should be used differently.  (Id.)

5       **2.      Analysis**

6   The Ninth Circuit has ruled that the "use of [tear gas] in small amounts may be a

7   necessary prison technique if a prisoner refuses after adequate warning to move from a cell

8   or upon other provocation presenting a reasonable possibility that slight force will be

9   required."  Spain, 600 F.2d at 195.  The court reasoned that in such circumstances, the

10  substance may be a legitimate means to prevent small disturbances from becoming dangerous

11  to other inmates or the prison personnel.  (Id.)  In Clement v. Gomez, the court found no

12  Eighth Amendment violation where a small amount of pepper spray was used to quell

13  fighting in a cell, even though the spray effected bystander inmates.  298 F.3d 898, 903-04

14  (9th Cir. 2002).

15  Plaintiff offers no specifics on the alleged use-of-force incidents and there is no

16  evidence of a policy of using pepper spray or other chemical agents for the purpose of

17  abusing inmates or that the force used was malicious or sadistic. Plaintiff does not claim to

18  have been pepper sprayed.   Plaintiff fails to demonstrate a triable issue of fact.

19                              **Temperatures**

20      **1.      Parties' Assertions**

21  Defendants assert that each year between November and April, the heating/cooling

22  system in November Unit is set to not fall below 70 degrees or rise above 74 degrees. (Doc.

23  54, DSOF ¶ 54.)  Plaintiff does not know the temperature in his cell, and he admits that he

24  suffered no physical injury as a result of the temperature of his cell.  (Id. ¶¶ 55-56.)

25  Plaintiff claims that the temperatures were only set at the levels described above after

26  the lawsuit was filed.  (Doc. 62, PSOF ¶ 54.)  He asserts that he did not know what the

27  temperature was but that officers were wearing heavy jackets.  (Id., Pl. Decl. ¶ 7.)

28

In their reply, Defendants reiterate that Plaintiff does not have a thermometer and cannot establish what the temperature is in November Unit. (Doc. 66 at 7.) They argue that he suffered no physical injury as a result of the temperature in his cell and that the Eighth Amendment does not protect against uncomfortable temperatures. Plaintiff has not demonstrated temperatures posing a "substantial risk of serious harm."

### 2.    Analysis

The Eighth Amendment guarantees adequate heating, Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir.1980) (complaints of near freezing temperatures state a claim), and temperatures cannot threaten inmates' health or safety. See Graves v. Arpaio, 623 F. 3d 1043, 1049 (9th Cir. 2010) (finding that temperatures in excess of 85 were dangerous only for inmates taking psychotropic medications). But the Eighth Amendment does not require "comfortable" temperatures. Keenan, 83 F.3d at 1091.

Defendants offer evidence that temperatures are kept in the 70 to 74 range. Plaintiff claimed in his First Amended Complaint that the temperatures were in the 50s (Doc. 7 at #A), but he admits in his response that he does not know what the temperatures were, although officers wore heavy jackets. He asserts that inmates did not have jackets or sweaters, but it is unclear what other clothing was available. On this record, Plaintiff fails to establish a substantial risk of harm; he demonstrates nothing more than discomfort and fails to demonstrate a triable issue of fact.

### Mirror

### 1.    Parties' Assertions

Defendants assert that for safety and security reasons, inmates in the November Unit are not permitted to have mirrors in their cells or in their showers because mirrors can be made into weapons. (Doc. 54, DSOF ¶¶ 57-58.)

Plaintiff claims that there are safety mirrors in the cells but no mirrors in the showers and he asks why the inmates cannot be permitted to shave in the cell. (Doc. 62, PSOF ¶¶ 57-58.)

Defendants argue in their reply that a mirror in the shower is not a necessity of life and that Plaintiff is not being denied adequate food, clothing, shelter, sanitation, personal safety, or medical care.  (Doc. 66 at 8-9.)

### 2.   Analysis

The Court finds that the denial of a mirror for shaving is insufficient to constitute the denial of the minimal civilized measure of life's necessities. <u>See e.g.</u>, <u>Green v. Denning</u>, 2011 WL 3880882, at *10 (D. Kan. 2011) (holding that denial of dental floss did not sufficiently allege an Eighth Amendment violation and noting that denial of dental floss was cited by those enacting the PLRA as a "classic example of a frivolous claim.").

### Recreation

### 1.   Parties' Assertions

Defendants assert that the Segregation Activity Record (SAR) tracks when an inmate has recreation.  (Doc. 54, DSOF ¶ 59.)  Recreation is logged by indicating if the inmate did or did not receive recreation or by indicating that he refused it. If an inmate refuses recreation, no further recreation is offered for that day. Outside recreation is allowed as weather permits.  (<u>Id.</u>)

Inmates in disciplinary segregation and administrative segregation are allowed 1 hour of outdoor recreation a day, 5 times a week, as permitted by facility needs.  (<u>Id.</u> ¶ 60.)  Cells have windows in the doors and opaque windows in the back for sunlight.  (<u>Id.</u>)  Plaintiff's SAR shows that in 2009, he was offered recreation 233 days and refused 36 times.  (<u>Id.</u> ¶ 61.) In 2010, Plaintiff was offered recreation 215 times and refused 7 times.  (<u>Id.</u> ¶ 62.) When a housing unit is on security lockdown, inmates are not offered recreation.  (<u>Id.</u> ¶ 63.) The November Unit was on security lockdown in January 2010 for approximately 30 days, for approximately 90 days beginning in February 2010, and for approximately 30 days in June 2010 and for 60 days in July 2010.  (<u>Id.</u>)  From January 1, 2011 to March 28, 2011, Plaintiff was offered recreation 57 times.  (<u>Id.</u> ¶ 60.)  Plaintiff goes to recreation 5 times a week for

1 hour each time, if available, and there is enough room in Plaintiff's cell to exercise.  (Id. ¶¶ 65-66.)

Plaintiff claims that SARs are sometimes marked to show that recreation was offered when, in fact, it was taken away and that it is taken away when "they want to for as long as they want to."  (Doc. 62, PSOF ¶¶ 59-61.)  He claims that lockdown is used to punish inmates and there are no limitations on how long lockdown can be.  (Id. Pl. Decl. ¶ 8.)  He claims that inmate Levan went 6 months without out-of-cell recreation.  (Id.)

In the reply, Defendants note that Plaintiff states that the documents and affidavits provided by Defendants in support of their Motion are false but that he offers no evidence supporting his allegations.  (Doc. 66 at 7.)  They offer evidence that Plaintiff has refused to go to recreation or November Unit was on security lockdown on several occasions.  (Id. at 7-8.)

## 2.    Analysis

Exercise is a basic human necessity protected by the Eighth Amendment; thus, the deprivation of outdoor exercise for inmates who are under long-term segregation violates the Constitution.  Keenan, 83 F.3d at 1089.  But restricting an prisoner's exercise privileges may be reasonable if the prisoner represents a serious security risk.  LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993).  Five hours of exercise per week has been found to be constitutionally sufficient.  See Baptisto v. Ryan, 2006 WL 798879, at *33 (D. Ariz. March 28, 2006) (collecting decisions of the Fourth, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits).

Defendants proffer evidence that except for lockdown situations, when weather permits, Plaintiff is offered out-of-cell recreation five times per week and that Plaintiff has, on occasion, refused recreation.  Plaintiff claims that the SARs is inaccurate or false, but he offers no evidence to substantiate that claim and does not specify when he did not receive recreation.   His major complaint is that unidentified staff place inmates on lockdown to punish them.  But there is no evidence of a policy to misuse lockdown, and Plaintiff's

allegations do not even connect Defendants to the alleged improper lockdowns.  Plaintiff fails to create a triable issue of fact, and Defendants are entitled to summary judgment on this claim.

### Cleaning Supplies

#### 1.    Parties' Assertions

Defendants assert that the SAR also tracks when an inmate receives cleaning supplies. (Doc. 54, DSOF ¶ 59.)  Defendants assert that inmates in disciplinary segregation and administrative segregation are provided cleaning supplies/chemicals on request and can use them for up to 10 minutes at a time.  (Id. ¶ 67.)  Cleaning supplies include, but are not limited to, scrub pads, disinfectants, and a broom without a handle.  Certain cleaning items are not permitted because they present a security risk. (Id.)  According to Plaintiff's SAR, in 2009, he  requested and received cleaning supplies/chemicals 7 times. (Id. ¶ 68.)  In 2010, Plaintiff requested and received cleaning supplies/chemicals 14 times.  From January 1, 2011 through March 28, 2011, Plaintiff requested and received cleaning supplies/chemicals once. (Id.)

Plaintiff claims that cleaning supplies are never issued except for chemicals and that inmates have not received those for the past five months and that there is no broom available. (Doc. 62, PSOF ¶ 67.)  The SAR is managed by staff who can say what they want; there are no signatures verifying receipt of supplies. (Id. ¶ 68.)  Cleaning supplies were provided only after the lawsuit was filed and there are never brooms.  (Id., Pl. Decl. ¶¶ 6, 24.)

Defendants argue in their reply that they establish that Plaintiff requested cleaning supplies infrequently. (Doc. 66 at 8.)  Although Plaintiff argues that the SAR reports are not accurate, he offers no evidence to support such an allegation and he fails to establish he suffered any injury or that Defendants were aware of any risk of serious harm to Plaintiff. Plaintiff does not even allege that his own cell was unsanitary.  (Id.)

///

///

1

2.      **Analysis**

2       Subjecting an inmate to lack of sanitation that is severe or prolonged may constitute

3   a constitutional deprivation.  Anderson, 45 F.3d at 1314; see Hutto v. Finney, 437 U.S. 678,

4   686-87 (1978).  Prison officials must provide inmates with adequate sanitation.  See Johnson

5   v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  If a prison official refuses to provide adequate

6   cleaning supplies and prevents inmates from maintaining minimally sanitary cells, thereby

7   threatening their health, it amounts to a constitutional violation.  See Hoptowit v. Spellman,

8   753 F.2d 779, 784 (9th Cir. 1985).

9       Defendants proffer evidence of the availability of cleaning supplies and evidence of

10  when Plaintiff requested them.  Again, Plaintiff claims that the SARs is inaccurate or false

11  because staff can write what they want on the SARs, but he offers no evidence to substantiate

12  that claim or to connect Defendants to the denial of specific requests for cleaning supplies.

13  As Defendants note, Plaintiff does not even claim that he was unable to maintain sanitation

14  in his cell.  Defendants are entitled to summary judgment on this claim.

15                              **Noise**

16  **1.      Parties' Assertions**

17      Defendants contend that any noise in the November Unit is minimal; inmates who do

18  not follow directions of facility staff related to noise are subject to discipline.  (Doc. 54,

19  DSOF ¶ 69.)  Plaintiff admits his only injury as a result of the noises in November Unit was

20  "staying up" and that the noises last only a "couple of hours."  (Id. ¶¶ 70-71.)

21      Plaintiff asserts that the noise is not minimal and that there are inmates who do not

22  care about a write-up.  (Doc. 62, PSOF ¶ 69.)  Inmates kick and pound the walls and doors.

23  (Id.)  He claims that earplugs are available at other prisons.  (Id., Pl. Decl. ¶ 19.)

24      Defendants argue that Plaintiff states that the noise is not minimal and that the noise

25  makes it difficult to sleep but he fails to establish that the noise levels posed a serious risk

26  of injury or were anything other than annoying to him.  (Doc. 66 at 9.)  He does not deny that

27

28

he never sought medical care related to the noise and he admits that the only affect as a result of the noise is "staying up." (Id.)

### 2.   Analysis

Exposure to excessive levels of noise can violate the Eighth Amendment. Keenan, 83 F.3d at 1090; Toussaint v. McCarthy, 801 F.2d 1080, 1110 (9th Cir. 1986). But the Court finds that Plaintiff fails to present evidence to show that the noise levels in the prison constituted an excessive risk to his health. In addition, Defendants offer evidence that they discipline inmates who create noise. Even prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, although the harm ultimately was not averted. Farmer, 511 U.S. at 844. Plaintiff fails to demonstrate a triable issue of fact as to Defendants' alleged deliberate indifference to Plaintiff's complaints about the noise levels.

The Court finds that, on this record, the individual conditions of confinement about which Plaintiff complains do not violate the Eighth Amendment. Although Plaintiff argues that the totality of the circumstances amounts to cruel and unusual punishment (Doc. 62, Pl. Decl. ¶ 27), the Court may not find an Eighth Amendment violation based on the "totality of conditions." See Hoptowit, 682 F.2d at 1246. The Court will grant Defendants' Motion for Summary Judgment. In addition, the Court will deny Plaintiff's Motion for an Extension of Time to File Dispositive Motions and his Motion for Reconsideration.[2] (Docs. 70, 72.)

///

///

---

[2] Plaintiff moves for reconsideration of the Magistrates Judge's Order granting Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment. (Docs. 72, 69, 65.) Plaintiff's Motion for Summary Judgment was untimely as it was filed on April 16, 2012 (a week after his response to Defendants' motion) and the deadline for filing the motion was February 24, 2012. (Docs. 65, 18.) Although Plaintiff claims that he did not receive a copy of Defendants' Motion to Strike (Doc. 72 at 1), it is irrelevant because the Court would have stricken the untimely motion *sua sponte*.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 53); Plaintiff's Motion for an Extension of Time to File Dispositive Motions (Doc. 70); and Plaintiff Motion for Reconsideration (Doc. 72).

(2) Plaintiff's Motion for an Extension of Time to File Dispositive Motions (Doc. 70) is **denied as moot**; and Plaintiff Motion for Reconsideration (Doc. 72) is **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. 53) is **granted as follows:**

(a) Plaintiff's claim for extreme idleness and lack of programs; that clothing provided in segregation is limited to only one change of clothes, a boxer and T-shirt; lack of access to a storage locker; and denial of sun block, lip balm, lotion, and dental floss unconstitutional lighting and denial of dental floss are **dismissed without prejudice** for failure to exhaust administrative remedies; and

(b) the remaining claims are dismissed **with prejudice**.

(4) The action is terminated, and the Clerk of Court must enter judgment accordingly.

(5) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 11th day of June, 2012.

_A. Murray Snow_
G. Murray Snow
United States District Judge